IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
JAMES J. PIERCE, an individual;    )
DAWN M. PIERCE, an individual,     )   2:11-cv-02280-GEB-EFB
                                   )
          Plaintiffs,              )
                                   )   ORDER CONCERNING FEDERAL
     v.                            )   DIVERSITY JURISDICTION
                                   )
COUNTY OF SIERRA, CALIFORNIA, a    )
political subdivision of the       )
State of California; OFFICE OF     )
SHERIFF OF THE COUNTY OF SIERRA;   )
JACOB ALLEN MURRAY, an             )
individual,                        )
                                   )
          Defendants.              )
_____)
```

Plaintiffs move for confirmation of this Court's federal diversity jurisdiction. Defendants filed an opposition to the motion, in which they contend this Court lacks diversity jurisdiction because Defendant Jacob Murray was domiciled in the State of Nevada when Plaintiffs filed their Complaint.

**I. PROCEDURAL BACKGROUND**

Plaintiffs filed this personal injury lawsuit in federal court based on their allegation that diversity jurisdiction exists under 28 U.S.C. § 1332(a)(1), since Plaintiffs are citizens of the State of Nevada and Defendants are citizens of the State of California. (Compl. ¶¶ 2-6.) Defendants answered Plaintiffs' Complaint, admitting that diversity jurisdiction exists, including the allegation that Defendant

1

Jacob Murray is "a resident and citizen of the State of California." (Answer ¶¶ 1, 5; Compl. ¶¶ 1, 5.)

This action was subsequently stayed pursuant to the parties' stipulation, which includes the parties' following agreement:

> [a] traffic accident . . . is the subject of this action . . . ;
> . . . .
> Defendant, Jacob Allen Murray [], is and was a Deputy Sheriff for the County of Sierra, State of California . . . ;
> . . . Plaintiffs' counsel, in an attempt to protect the case if a diversity challenge were made, filed . . . in the Superior Court of California . . . [a] [STATE ACTION];
> . . .
> . . . counsel for defendants have recently provided counsel for plaintiffs with a 'Declaration of Jacob Allen Murray' which states, in relevant part, MURRAY was, at the time of the accident and the filing of this action, a resident of the State of Nevada;
> . . . counsel for plaintiffs would have, in this action, sought an opportunity to conduct discovery regarding MURRAY'S domicile in Nevada, including . . . the reasons for MURRAY'S move to and his intent to remain in Nevada; and
> . . . counsel agree the aforementioned discovery can be conducted in the STATE ACTION [and] are willing . . . to avoid the necessity of motion practice over the diversity issue in this [federal] court until such time as discovery is conducted.

(ECF No. 12, 1:20-2:11.)

After the parties conducted discovery in the STATE ACTION concerning the federal diversity jurisdiction issue, they sought and received a briefing schedule in this federal action, "to allow Plaintiffs to file a motion for determination of Defendant Murray's domicile." (ECF No. 16, 3:11.) Plaintiffs filed the pending Motion to Confirm Diversity Jurisdiction ("Motion"); Defendants filed an opposition brief ("Opposition"), in which they challenged the existence of diversity jurisdiction.

2

**II. LEGAL STANDARD**

Although Defendants did not themselves file a motion challenging diversity jurisdiction, Defendants' Opposition clearly attacks the existence of diversity jurisdiction. Defendants' Opposition is "properly before the court as a [Federal] Rule [of Civil Procedure] 12(h)(3) suggestion of lack of subject matter jurisdiction." Augustine v. United States, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983) (citations omitted); see also Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 n.2 (9th Cir. 2004)(same).[1]

Challenges to a court's subject matter jurisdiction "can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Facial challenges attack the pleadings as insufficient to invoke federal jurisdiction; factual challenges contest the truth of the jurisdictional pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack on jurisdiction, a court "may look beyond the complaint" to evaluate the jurisdictional facts without converting the motion into a motion for summary judgment. White, 227 F.3d at 1242; Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987) (collecting cases).

Here, Defendants make a factual attack on jurisdiction. The parties have presented evidence in support of their respective positions on jurisdiction. In light of the nature of the factual dispute, the

---

[1] Courts have entertained Motions to Confirm Subject Matter Jurisdiction similar to Plaintiffs', but this issue need not be reached since Defendants' Opposition is treated as a Rule 12(h)(3) suggestion instead. See generally Taheny v. Wells Fargo Bank, N.A., No. CIV.S-10-2123 LKK/EFB, 2012 WL 1120140, __ F. Supp. 2d __, at *14, *2 n.7 (E.D. Cal. Apr. 3, 2012) (considering and denying Defendant's post-answer "Motion To Confirm Subject Matter Jurisdiction"); In re HP Inkjet Printer Litig., No. C 05-3580 JF (PVT), 2009 WL 282051, at *3, *1 (N.D. Cal. Feb. 5, 2009) (granting Defendant's unopposed "motion to confirm the Court's subject-matter jurisdiction").

3

1  matter was submitted without an evidentiary or other hearing. "Because
2  no evidentiary hearing was held, we accept as true the factual
3  allegations in the complaint." McLachlan v. Bell, 261 F.3d 908, 909 (9th
4  Cir. 2001).

### III. EVIDENTIARY OBJECTIONS

6  Defendants filed evidentiary objections to nine statements or
7  documents attached as Exhibits 1, 4, and 5 to Plaintiffs' Motion. (ECF
8  No. 25.) Exhibit 1 is comprised of excerpts from Murray's Deposition
9  Transcript. Defendants object to the following testimony from Murray's
10 deposition: (1) "During his tenure in Nevada, Murray maintained a
11 mailing address in Truckee, California."; (2) "Murray maintained
12 membership at Oddfellows Club in Truckee, California."; (3) "Murray
13 maintained membership in California, Operating Engineers, Sierra County
14 branch."; (4) "Murray maintained membership in Sierra County Deputy
15 Sheriff's Association."; and (5) "When not required to stay in Verdi by
16 the mandates of his Resident Deputy status, Murray regularly returned to
17 California." (Id. at 4:8-6:23.)

18 Defendants object to each averment on grounds of relevance and
19 danger of unfair prejudice. Specifically, Defendants maintain that since
20 diversity jurisdiction is determined on the date the complaint is filed,
21 anything occurring after Plaintiffs' filed their Complaint on August 26,
22 2011 is not relevant for the purposes of determining subject matter
23 jurisdiction. (ECF No. 25, 4:16-18, 5:3-5, 5:17-19, 6:3-5, 6:17-19.)
24 According to Defendants, the challenged deposition testimony is
25 irrelevant and unfairly prejudicial because Plaintiffs did not
26 specifically ask Murray whether he maintained his mailing address, union
27 and organizational memberships, or biweekly visits to California on or
28

4

before the filing of this action.[2] (Id. at 4:19-20, 5:6-7, 5:20-21, 6:6-7, 6:20-21.)

Plaintiffs reply that such evidence is consistently recognized as probative of a person's continued connections to, and intent to remain domiciled in, a prior domicile. (ECF No. 28, 5:19-26.) Whether Murray maintained these connections at or after the filing of the Complaint, they remain relevant to, and probative of, his domiciliary intent. Id. Plaintiffs are correct. While domicile is determined when the action is initiated, "subsequent events may bear on the sincerity of a professed intention to remain." Garcia Perez v. Santaella, 364 F.3d 348, 351 (1st Cir. 2004). Since Murray's domiciliary intent is at issue, his California mailing address, organizational memberships, and visits are relevant to determining that intent, and their probative value is not substantially outweighed by the danger of unfair prejudice. Regardless of whether Murray maintained these ties to California when the Complaint was filed or in the seven months after filing but before his deposition, his California connections affect the weight afforded to his declaration four months after filing of the Complaint that he "ha[d] no plans to move to another state." (ECF No. 20-3, ¶ 4.)

Defendants further object to "Plaintiffs' characterization that Murray returned to California '(w)hen not required to stay in Verdi' as it misstates testimony." (ECF No. 25, 6:22-23.)[3] Plaintiffs

---

[2] Instead, Plaintiffs' asked Murray: (1) "Do you maintain that mailing address [in Truckee, California]? Do you still have that mailing address?" (ECF No. 20-2 29:24-25.); (2-4) "Are you currently a member of any clubs or organizations?" (Id. at 21:19-20.); and (5) "Do you stay anywhere else on a regular basis? . . . Where? . . . How frequently? . . . Is that on your days off?" (Id. at 10:23-11:6.)

[3] The following exchange occurred in deposition:
A . . . I travel to Roseville frequently to visit family.
(continued...)

5

rejoin, noting "Murray testified he traveled to California on 'days off.' As resident deputy, those would be the days he was not required to reside in Verdi." (ECF No. 28, 5:26-6:1.) Since Plaintiffs' statement accurately reflects what is in the deposition transcript, Defendants' objection that the statement misstates Murray's testimony is overruled.

Defendants object to the following averments in the Affidavit of Michael Pierczyk, Murray's landlord, attached to Plaintiffs' Motion as Exhibit 4: (1) "Murray rented an apartment from me in Verdi, Nevada, from approximately February 2011 until March or April 2012."; and (2) "At or around the time he vacated his apartment, Mr. Murray informed me he was no longer employed as a Sheriff's Deputy for the County of Sierra and would no longer need to rent the apartment from me." (ECF No. 25, 1:21-2:23.)

Defendants object to these statements on the following grounds: relevance, danger of unfair prejudice, and hearsay. Defendants' relevance and unfair prejudice objections reiterate that "anything occurring after August 26, 2011 [,when the Complaint was filed,]is not relevant for the purposes of this motion." (ECF No. 25 2:3, 2:20.) Defendants' hearsay objection is that "statements made by Mr. Murray where he 'informed Mr. Pierczyk' are inadmissible hearsay." (Id. at 2:23.) Plaintiffs reply that this evidence is probative of Murray's intent and that Murray's statement to Pierczyk is not hearsay because "it is opposing party's statement Rule 801." (ECF No. 28, 5:3-4.) Defendants' relevance and unfair prejudice objections are overruled

---

[3](...continued)
    Q How frequently?
    A Biweekly.
    Q Is that on your days off?
    A Yes.
(ECF No. 20-2, 11:1-6.)

because of the degree of probative value the statements have on Murray's domiciliary intent at the time the Complaint was filed. Defendants' hearsay objection is overruled because Murray's statement is a nonhearsay opposing party's statement under Fed. R. Evid. 801(d)(2).

Defendants further object to Plaintiffs' Exhibit 6, which is a Certified Copy of State of Nevada Department of Motor Vehicle certificate, on grounds of relevance, unfair prejudice, hearsay, and lack of authentication. (ECF No. 25, 3:19-24.) Plaintiffs reply that the evidence is probative of Murray's domiciliary intent, is not unduly prejudicial, and is a certified copy of a public record. (ECF No. 28, 5:15-16.) Defendants' relevance and unfair prejudice objections are overruled because of the degree of probative value the evidence has on Murray's domiciliary intent at the time the Complaint was filed. Defendants' hearsay objection is overruled because Exhibit 6 is an admissible public record under Fed. R. Evid. 803(8)'s exception to the rule against hearsay. Finally, Defendants' authentication objection is overruled, since as a certified copy of a public record, the Exhibit is self-authenticating and requires no extrinsic evidence of authenticity in order to be admitted. Fed. R. Evid. 902(4).

### IV. FACTUAL BACKGROUND

Plaintiffs' Complaint contains the following allegations. This action arises out of a traffic accident. On November 6, 2010, Defendant Murray struck Plaintiff James Pierce while acting in the course and scope of his employment. (Compl. ¶¶ 7, 9-13; Answer ¶ 7.) At the time, Murray was a Sheriff's Deputy employed by the County of Sierra ("County") and the Office of the Sheriff of the County of Sierra ("Sheriff"). (Compl. ¶ 5; Answer ¶ 5.) As a result of the collision, Pierce sustained serious and life threatening injuries and incurred

medical costs exceeding six hundred thousand dollars. (Compl. ¶¶ 8, 14.) On August 26, 2011, Pierce and spouse Dawn Pierce filed suit in federal court against County, Sheriff, and Murray alleging diversity of citizenship jurisdiction.[4] (Compl. ¶¶ 1-6.) Plaintiffs are citizens of the State of Nevada. (Compl. ¶ 2; Answer ¶ 2.) Defendant County is a political subdivision of the State of California, and Defendant Sheriff is an office of the County. (Compl. ¶¶ 3-4; Answer ¶¶ 3-4.)

Plaintiffs assert in their Motion that the following facts are undisputed, and Defendants have not controverted these facts, except for the facts concerning which Defendants' objections have been overruled. At the age of twelve, Murray moved to the State of California and became domiciled in California. (Mot. ¶¶ 9-10.) Except for his short military service, Murray remained a California resident with a California domicile from 1992 until 2010. (Id.) In October 2010, Murray's employer asked him to move to Verdi, California to become a Resident Deputy in Verdi, California. (Id. at ¶ 3.) Verdi itself transects the California-Nevada border. (Id. at ¶ 5.) Murray accepted the post and "searched for a residence in Verdi, California." (Id. at ¶ 6.) "Unable to find a residence on the California side of Verdi," Murray moved to Verdi, Nevada instead. (Id. at ¶ 7.) Murray had never lived in Nevada before. (Id. at ¶ 8.) As a new Nevada resident, Murray obtained a Nevada driver's license and vehicle registration "believ[ing] he was required by state law" to do so. (Id. at ¶ 14.)

On August 26, 2011, when this action was filed, Murray resided in an apartment in Verdi, Nevada. (Id. at ¶ 7.) On December 20, 2011,

---

[4] Plaintiffs also filed suit against Defendants Does 1 through 100 and Brad S. Dempster. (Compl. ¶ 6.) On November 8, 2011, Does 1 through 100 were dismissed. (ECF No. 9, 1:23.) On December 30, 2011, Dempster was dismissed without prejudice. (ECF No. 11, 1:22.)

Murray declared by affidavit "I am presently a resident of the state of Nevada and have no plans to move to another state." (ECF No. 20-3 ¶ 4.)

While a Verdi, Nevada resident, Murray continued to work in and report to Loyalton, California. (Mot. ¶ 13.) Murray maintained a mailing address in California and memberships in the Oddfellows Club in Truckee, California; the Sierra County Deputy Sheriff's Association; and the Sierra County Sheriff's Division of Operating Engineers. (Id. at ¶¶ 15-18.) He paid taxes only to the State of California, and he returned to California on a biweekly basis, on his days off, to visit family. (Id. at ¶¶ 19-20.)

In March or April 2012, Murray moved back to California. (Id. at ¶ 22.) When he moved, Murray told his landlord that "he was no longer employed as a Sheriff's Deputy for the County of Sierra and would no longer need to rent [his] apartment." (Id. at ¶ 21; ECF No. 20-5 ¶ 2.) After returning to California, Murray allowed his Nevada vehicle registration to lapse. (Mot. ¶ 23.)

**V. DISCUSSION**

Federal district courts are vested by statute with jurisdiction over civil actions "between citizens of different States." 28 U.S.C. § 1332(a)(1). This statutory grant of jurisdiction "is to be strictly construed," and thus jurisdiction cannot "'be maintained by mere averment.'" Kantor v. Wellesley Galleries Ltd., 704 F.2d 1088, 1092 (9th Cir. 1983); Lew v. Moss, 797 F.2d 747, 751 (9th Cir. 1986)(citation omitted). The party invoking diversity jurisdiction bears the burden of pleading and proving the requisite jurisdictional facts. Kanter v. Warner-Lambert Co., 265 F.3d 853, 857-58 (9th Cir. 2001). If those facts are challenged, the party asserting jurisdiction must supply competent proof of the court's jurisdiction by a preponderance of the

evidence. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403 (9th Cir. 1996) (citation omitted).

To establish citizenship for diversity purposes, a party must "(a) be a citizen of the United States, and (b) be domiciled in a state of the United States." Lew, 797 F.2d at 749. Under federal common law, "'[a] person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.'" Gaudin v. Remis, 379 F.3d 631, 636 (9th Cir. 2004) (citing Kanter, 265 F.3d at 857).

Due to the "presumption in favor of an established domicile as against a newly acquired one," absence from one's domicile does not destroy the domicile. Lew, 797 F.2d at 751, 750. Rather, the old domicile remains until a new domicile is acquired. Id. at 750. "A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." Lew, 797 F.2d at 750 (citations omitted).

When a party challenges diversity jurisdiction by alleging a new domicile, the presumption against newly acquired domiciles shifts the burden of production onto that party. Lew, 797 F.2d at 751. He must "produce enough evidence to substantiate his claim of a change in domicile to withstand a motion for directed verdict." Id. The party asserting federal jurisdiction, however, continues to bear the burden of proof. Id. Jurisdiction, itself, is "assessed at the time the action is filed." Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991). It cannot later be divested due to subsequent events. Id.

Defendants argue in their Opposition, that Murray was domiciled in Nevada when the Complaint was filed, because Murray was living in Nevada at that time and because he intended to reside in

1  Nevada indefinitely, as evidenced by the declaration he authored four
2  months later which contains the averment: "I . . . have no plans to move
3  to another state." (Opp'n 5:13-23; ECF 20-3, ¶ 4.) Defendants' also
4  assert that Murray's payment of California taxes and membership in work-
5  related California organizations do not evidence his intent to remain in
6  California, but are rather the "natural" result of Murray's employment
7  in California. (Opp'n 3 n.1.)
8      Plaintiffs counter that Murray never intended to abandon his
9  California domicile and create a new domicile in the State of Nevada.
10 Plaintiffs contend Murray did not intend to move to Nevada: rather, he
11 did so "at the request of his superior officer" and "only when he was
12 unable to find a residence on the California side." (Mot. 8:22-24.)
13 While a Nevada resident, Murray worked in California, paid California
14 taxes, visited his family in California on a biweekly basis, maintained
15 a California mailing address, and belonged to California-based
16 organizations and a California union. Murray did obtain a Nevada
17 driver's license and registration after her moved there. However,
18 Plaintiffs argue "'little weight'" should be given to Murray's statement
19 of intent to remain in Nevada or to his Nevada registration and driver's
20 license, which he did not choose to take out, but "was required by
21 Nevada law to obtain." (Mot. 10:2, 10:9-10.)
22     Since Defendants' challenge jurisdiction by alleging a new
23 domicile, Defendants bear the burden of producing "substantial evidence"
24 to support their claim of change in domicile. <u>Lew</u>, 797 F.2d at 752.
25 Defendants-who allege merely that Murray resided in Nevada, obtained a
26 Nevada driver's license and registration, and declared that he had no
27 "intent to move"-have not met that burden.
28

While a party's statement of domiciliary intent is probative of such intent, such statements of intent deserve "little weight" when they conflict with "objective facts." Kyung Park v. Holder, 572 F.3d 619, 625 (9th Cir. 2009) (citations and internal quotation marks omitted). In such cases, subjective intent should instead be measured by objective factors. Id. Specifically:

> the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

Lew, 797 F.2d at 750. Here, the balance of the Lew factors do not indicate that Murray intended to abandon his California domicile. During his tenure in Nevada, Murray's work, visits, taxes, mailing address, organizational memberships, and family all remained in California. Twice a week, on his days off, Murray returned to California. California was thus Murray's "'domicile. . . It [wa]s the place to which, whenever he [wa]s absent, he ha[d] the intention of returning.'" Martinez v. Bynum, 461 U.S. 321, 331 (1983)(citation omitted).

By contrast, Murray evinced little affirmative intent to make Nevada his permanent home. Far from seeking out Nevada, the record indicates that Murray lived on the Nevada side of a Verdi—a town that straddles state lines—only after failing to find housing in California. He moved to the California-Nevada border itself only because his employer asked him to do so. Yet moving to a new jurisdiction for a limited purpose is insufficient to effect a change in domicile when the party's domiciliary intent is in question. Gaudin, 379 F.3d at 637.

Before a bona fide new domicile is established, the motive for the domicile's acquisition and the duration of the domicile are relevant to determining domiciliary intent. See Williamson v. Osenton, 232 U.S. 619, 625 (1914) (domiciliary motive matters when "there is an issue open on the intent"). Murray soon left Nevada when his job ended, explaining that his employment had ended and he would no longer need his Nevada apartment. Since Murray's domiciliary intent is in issue, the fact that he moved to Nevada for a limited time and a limited purpose bear on, and undercut, the credibility of his professed intent to remain.

Besides his Nevada residency, the only objective evidence proffered by Defendants to establish that Murray made Nevada his home is that Murray obtained a Nevada driver's license and vehicle registration, as was required by law. Yet, this is insufficient to rebut the presumption in favor of Murray's California domicile. See, e.g., Abbott v. United Venture Capital, Inc., 718 F. Supp. 823, 826-27 (D. Nev. 1988) (holding plaintiff was domiciled in California in light of living in California, despite his Nevada apartment, driver's license, vehicle registration, tax returns, professional license, and bank account); Herzog v. Herzog, 333 F. Supp. 477, 478 (W.D. Penn. 1971) (declaring that "little weight" can be given to plaintiff's new license and vehicle registration since she was "obliged by law to obtain those licenses").

Although probative, Murray's averment in his declaration that he "ha[d] no plans to move to another state" is belied by the abundant objective evidence of his ongoing domiciliary ties to California. (ECF No. 20-3, ¶ 4.) Nor is this averment substantiated by Murray's temporary Nevada residency, vehicle registration, and driver's license.

For the reasons stated herein, Defendants "did not present substantial evidence to support [their] contention that [Murray's]

13

domicile had changed from California to [Nevada]" by the date the Complaint was filed. Lew, 797 F.2d at 752. Therefore, it has not been shown that the federal court lacks diversity jurisdiction.

Further, a Status (Pretrial Scheduling) Conference is scheduled to commence at 9:00 a.m. on October 15, 2012. A joint status report shall be filed no later than fourteen (14) days prior to the Status Conference, in which the parties shall address the applicable sections set forth in Local Rule 240.

Dated: September 13, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge